UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JASON GOODE,<br>*Plaintiff*,<br><br>v.<br><br>CONNECTICUT DEPARTMENT<br>OF CORRRECTION, et al.,<br>*Defendants*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CASE NO. 3:25-cv-1266 (KAD)<br><br><br><br><br>October 14, 2026 |

**INITIAL REVIEW ORDER**

Kari A. Dooley, United States District Judge

Jason Goode ("Plaintiff"), a sentenced inmate housed at Corrigan-Radgowski Correctional Center, filed an Amended Complaint *pro se* under 42 U.S.C. § 1983. Plaintiff names as Defendants: (1) MacDougall-Walker Correctional Institution ("MWCI") Warden Daniel Dougherty, (2) MWCI Deputy Warden Doran, (3) Deputy Commissioner of the Department of Correction ("DOC") William Mulligan, and (4) former Commissioner of the DOC Angel Quiros. Plaintiff seeks damages and declaratory relief from Defendants for allegedly violating his rights under the United States Constitution and Connecticut state law.

For the following reasons, Plaintiff may pursue damages from Defendants in their individual capacities on his First Amendment and state law claims.

**Background**

Plaintiff filed a Complaint alleging that prison officials violated Plaintiff's rights under the First, Eighth, and Fourteenth Amendments, the Americans with Disabilities Act, and Conn. Gen. Stat. § 18-81oo by prohibiting Plaintiff from making free, daily 90-minute phone calls while he was in Administrative Segregation ("AS") at MWCI. *See* Compl., ECF No. 1. After reviewing Plaintiff's Complaint under 28 U.S.C. § 1915A, the Court dismissed all claims (and thus the

Complaint) for failure to state a claim upon which relief could be granted. *See* Initial Review Order ("IRO"), ECF No. 12 at 15–16. Plaintiff appealed the IRO instead of filing an Amended Complaint. *See* Not. of App., ECF No. 14.

The Second Circuit subsequently "conclude[d] that the district court correctly ruled that [Plaintiff's] complaint did not state a First Amendment claim," but it remanded the case to permit Plaintiff to file an amended complaint containing his First Amendment claim in light of new allegations that Plaintiff raised before the Second Circuit. Mandate, ECF No. 19 at 1–2. The Second Circuit also vacated the Court's judgment as to Plaintiff's state law claim because "his state law claim was dismissed only because his federal claims were dismissed[.]" *Id.* at 2. Plaintiff then filed an Amended Complaint containing only his First Amendment and state law claims. *See* Am. Compl., ECF No. 25 at 8–9.

In assessing the factual basis of the claims asserted in Plaintiff's Amended Complaint, the Court will not consider allegations from the original Complaint. *See Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't of Health & Hum. Servs*., 145 F.4th 212, 225 (2d Cir. 2025) ("It is well-established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (cleaned up); *see*, *e.g*., *Dinh v. Doe*, No. 3:24-CV-1042 (OAW), 2024 WL 3343006, at *3 (D. Conn. July 9, 2024) (noting that "the court will not consider any allegations made in the original complaint while evaluating any amended complaint"). And because the purpose of an amended complaint is "to clarify or amplify the original cause of action, not add new causes of action[,]" the Court's review of the Amended Complaint is limited to whether Plaintiff has pled additional facts that would support previously dismissed claims. *Castellano v. Trump*, No. 3:17-CV-381 (MPS), 2017 WL 4401451, at *1 (D. Conn. Sept. 29, 2017) (citations omitted); *see also Jordan v. Quiros*, No. 3:23-CV-254 (VAB), 2024 WL 3219130, at *4 (D. Conn. June 28, 2024)

(refusing to consider plaintiff's "new theories of liability or new claims" in his amended complaint because it would defy the purpose of amendment).

**Allegations**

The Court summarizes Plaintiff's allegations below.

In 2022, Plaintiff was housed in the Walker Building at MWCI because he was in AS, a form of solitary confinement.[1] Am. Compl., ECF No. 5 at ¶¶ 1, 6–7. AS inmates enjoyed fewer privileges than inmates in the general population. *See id.* at ¶ 7. Inmates in "Phase One" of AS are permitted only one phone call per week. *Id.* at ¶ 8. Inmates in "Phase Two" of AS are permitted two phone calls per week. *Id.* at ¶ 9. And inmates in "Phase Three" of AS are permitted three phone calls per week. *Id.* Such inmate calls are monitored by the prison. *See id.* at ¶ 23.

Plaintiff "reasonably believe[s]" that, in 2022, former MWCI Warden Kristen Barone submitted a request to the Commissioner of the DOC to permit AS and SRG inmates to receive "state[-]issued tablets." *Id.* at ¶ 10. AS and SRG inmates received those tablets, which contained a "telephone app," later that year. *Id.* at ¶ 11. Even after receiving the tablet with the telephone app, however, Plaintiff was limited to one phone call per week. *Id.* at ¶ 12. Plaintiff could make that phone call on a landline phone or from his cell on the telephone app on his tablet. *Id.*

In June of 2021, the Connecticut legislature enacted Conn. Gen. Stat. § 18-81oo,[2] which provides, in relevant part:

> On and after July 1, 2022, the commissioner shall provide voice communication service to persons who are in the custody of the commissioner and confined in a

[1] "Inmates at MacDougall-Walker Correctional Institution are housed in the MacDougall building or the Walker building." *Jordan v. LaFrance*, No. 3:18-cv-1541 (MPS), 2019 WL 5064692, at *2 (D. Conn. Oct. 9, 2019). The Department of Correction ("DOC") uses the Walker building to house AS and Security Risk Group ("SRG") inmates. *See Goode v. Cook*, No. 3:20-cv-0210 (VAB), 2023 WL 3570632, at *2 (D. Conn. May 19, 2023); *Lusmat v. Papoosha*, No. 3:20-cv-01386 (JAM), 2021 WL 3206843, at *3 (D. Conn. July 29, 2021).

[2] *See* 2021, P.A. 21-54, § 1, eff. June 16, 2021; 2021, June Sp. Sess., P.A. 21-2, § 52, eff. June 23, 2021. It is "proper to take judicial notice of any pertinent state statutes[.]" *Robinson v. Wentzell*, No. 3:18-CV-00274 (SRU), 2019 WL

> correctional facility. The commissioner may supplement such voice communication service with any other communication service, including, but not limited to, video communication and electronic mail services. Any such communication service shall be provided free of charge to such persons and any communication, whether initiated or received through any such service, shall be free of charge to the person initiating or receiving the communication.
>
> Conn. Gen. Stat. § 18-81oo(b)(1).

This section also provides that:

> Each person in the custody of the commissioner and confined in a correctional facility shall be eligible to use the voice communication service described in subdivision (1) of this subsection for at least ninety minutes on each day of such person's confinement, provided the provisions of this subdivision shall not be interpreted to interfere with the standard operations of the facility in which such person is confined.
>
> Conn. Gen. Stat. § 18-81oo(b)(2).

Despite section 18-81oo permitting prisoners to make free, daily 90-minute phone calls beginning on July 1, 2022, Plaintiff was still limited to one phone call per week after section 18-81oo was enacted. Am. Compl., ECF No. 25 at ¶ 16. Around July 1, 2022, Quiros and Mulligan amended Administrative Directive ("A.D.") 9.4 to remove its "single call restriction" for AS and SRG inmates. *Id.* at ¶ 17. However, Doran issued a notice on July 15, 2022, indicating that AS and SRG inmates would still be subject to the single call restriction notwithstanding the privileges conferred to inmates under section 18-81oo. *Id.* at ¶ 19 (citing Ex. 1, *id.* at 13). In August of 2022, Quiros and Mulligan "rescinded the amendment" to A.D. 9.4, thereby reinstating the single call restriction for AS and SRG inmates. *Id.* at ¶ 18.

Shortly after Quiros and Mulligan rescinded the amendment to A.D. 9.4, Plaintiff filed a grievance complaining of the reinstatement of the single call restriction for AS and SRG inmates. *Id.* at ¶ 20. Dougherty "thwarted" Plaintiff's grievance because Plaintiff was on a grievance

---

1207858, at *6 n.5 (D. Conn. Mar. 14, 2019) (citing Fed. R. Evid. 201(b)(2)).

restriction. *Id.* Although Dougherty did not respond to the merits of Plaintiff's grievance, Dougherty responded to a similar grievance filed by another inmate on AS. *Id.* at ¶ 21 (citing Ex. 3, *id.* at 15). Dougherty denied that inmate's grievance for the following reasons:

> Effective July 1, 2022, pursuant to Connecticut General Statutes §18-81oo (codified by Public Act 21-54, as amended by Section 52 of Public Act 21-2 of the June 2022 Special Session), inmate telephone calls became taxpayer supported. Furthermore, the statute provides that when to do so does not "*interfere with the standard operations of the facility*," inmates are permitted six (6) 15-minute telephone calls per day. The monitoring of those individuals on Administrative Segregation (Phase 1) status and the necessary restrictions imposed in such housing units fall within "the standard operations of the facility" and preclude the allowance of six (6)[ ]15-[]minute telephone calls per pay [sic]. Therefore, your grievance is denied.
>
> Ex. 3, *id.* at 15 (emphasis in original; alterations added).

Plaintiff maintains that Dougherty's given justification for denying AS inmates free, daily 90-minute phone calls was "false" because, in April of 2022, Defendants "beg[a]n to allow Plaintiff ten (10) social e-mail communication[s] — a legislative component of [Conn. Gen. Stat.]. § 18-81oo; and allowed such communications to the present day." *Id.* at ¶ 22. Such email communications are monitored by the prison. *See id.* at ¶ 23.

In late December 22, 2023, Captain Hector Concepcion, along with Defendants, permitted Plaintiff to receive six free phone calls while Plaintiff was still in AS. *Id.* at ¶ 24. Aside from this, no other inmate in AS ever received "free telephonic phone calls [every] day." *Id.* at ¶ 25.

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b).[3]

[3] The Court limits its initial review under 28 U.S.C. § 1915A to Plaintiff's federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed

In doing so, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citation omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In conducting its initial review, a court may consider "relevant records and written correspondences" attached to the complaint. *See Breton v. Lamont*, No. 3:21-CV-719 (SRU), 2021 WL 3726011, at *2 n.3 (D. Conn. Aug. 23, 2021).

**Discussion**

The new allegations in the Amended Complaint warrant a new analysis of Plaintiff's First Amendment claim. The Court recited the First Amendment standard in its initial review order, *see* IRO, ECF No. 12 at 4–6, but it bears repeating in light of the new allegations in the Amended Complaint.

"While the First Amendment does not in terms protect a 'right of association,'" the Supreme Court has "recognized that it embraces such a right in certain circumstances." *City of Dallas v. Stanglin*, 490 U.S. 19, 23–24 (1989). Those circumstances consist of "two different sorts of

---

at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. If there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

'freedom of association,'" *id.* at 24: (1) the freedom "to enter into and maintain certain intimate human relationships" like "those that attend the creation and sustenance of a family[,]" *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–19 (1984); and (2) the freedom "to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion[,]" *id.* at 618.

"[I]mprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment." *Beard v. Banks*, 548 U.S. 521, 528 (2006) (citing *Turner v. Safley*, 428 U.S. 78, 93 (1987); *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987)). However, "the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere." *Id.* (citing *Turner*, 428 U.S. at 84–85). The Supreme Court has observed that "freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citations omitted). As such, "[s]ome curtailment of that freedom must be expected in the prison context." *Id.* "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. "[S]uch a standard is necessary if prison administrators, and not the courts, are to make the difficult judgments concerning institutional operations." *Id.* (cleaned up) (quoting *Jones v. North Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 128 (1977)).

Determining whether a prison regulation is "reasonably related to legitimate penological interests" requires consideration of four factors ("the *Turner* factors"). *Kravitz v. Purcell*, 87 F.4th 111, 128 n.14 (2d Cir. 2023). First, the Court must consider whether there is "a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89 (citation omitted). Second, the Court must determine "whether

there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. Third, the Court must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* And fourth, the Court must decide whether there is an "absence of ready alternatives." *Id.* (citation omitted). "The burden is upon the prisoner to show that a challenged prison regulation is unreasonable." *Covino v. Patrissi*, 967 F.2d 73, 79 (2d Cir. 1992) (citation omitted).

The first *Turner* factor requires the Court to consider whether there is "a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner*, 482 U.S. at 89 (citation omitted). This, in turn, requires the Court to consider (1) whether the "governmental objective" is a "legitimate and neutral one" and (2) whether there is a "logical connection between the regulation and the asserted goal" that is not "so remote as to render the policy arbitrary or irrational." *Id.* at 89–90.

As to first component of the first *Turner* factor, Defendants' stated "governmental objective," *id.* at 90, for prohibiting AS inmates from making free, daily 90-minute phone calls remains the same: preventing "interfer[ence] with the standard operations of the facility[.]" Am. Compl., ECF No. 25 at ¶ 21 (internal quotation marks omitted) (citing Ex. 3, *id.* at 15); *see also* Compl., ECF No. 1 at ¶ 23. In the IRO on Plaintiff's original Complaint, the Court concluded that maintaining the standard operations of a prison facility is a "legitimate" governmental objective. IRO, ECF No. 12 at 6–7. Even in light of Plaintiff's new allegations, this remains true. *See Overton*, 539 U.S. at 129 (noting that "legitimate objectives of the corrections system" include "the maintenance of basic order"); *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 328 (2012) (first alteration in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("[M]aintaining institutional security

and preserving internal order and discipline are essential goals that may require limitation or retraction of retained constitutional rights of . . . convicted prisoners")).

In the IRO on Plaintiff's original Complaint, the Court concluded that maintaining the standard operations of a prison facility was also a "neutral" governmental objective because it furthers a legitimate penological goal — maintaining standard operations. IRO, ECF No. 12 at 7. Even in light of Plaintiff's new allegations, this also remains true. *See Giano v. Senkowski*, 54 F.3d 1050, 1055 (2d Cir. 1995) ("As to neutrality: even content-based First Amendment restrictions have been treated as neutral if their sole purpose is to maintain prison security and decrease violence among inmates.").

As to the second component of the first *Turner* factor, the Court concluded that Defendants' "legitimate and neutral" phone call policy bore a "logical connection" to maintaining the standard operations of the prison that was not "so remote as to render the policy arbitrary or irrational." IRO, ECF No. 12 at 7 (quoting *Turner*, 482 U.S. at 89–90). Based on the allegations in the Complaint, the Court drew this conclusion because, by limiting the number of phone calls that AS inmates could make, prison officials limited the number of movements of such inmates. *See id.* at 8. And by limiting the number of movements of AS inmates, this limited the risk that these inmates may pose to staff or other inmates. *See id.* This, in turn, maintained the "standard operations of the facility." *Id.* (quoting Compl., ECF No. 1 at ¶ 23). Thus, as in *Overton* and *Beard*, the "logical connection between the regulation and the asserted goal" was not "so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89–90. However, the Court cannot draw the same conclusion in light of the new allegations alleged in the Amended Complaint.

The Court drew a logical connection between Defendants' phone call policy and maintaining the standard operations of the prison based on the understanding that AS inmates could only make

phone calls on a landline phone (and thus had to be taken to the landline phone by prison staff). *See* IRO, ECF No. 12 at 8. But Plaintiff maintains in the Amended Complaint that he was *also* able to make phone calls from a tablet he possessed in his cell. *See* Am. Compl., ECF No. 25 at ¶¶ 11–12. If Plaintiff could make phone calls from a tablet in his cell, prison staff would not have to escort Plaintiff to a landline phone. If prison officials did not have to escort Plaintiff to a landline phone, Plaintiff would present no additional risk to prison staff or other inmates. If that is so, then limiting Plaintiff's phone calls (and thus his movements to make them), does not maintain the standard operations of the prison. Because limiting Plaintiff's phone calls does not maintain the standard operation of the prison, there can be no "logical connection" to maintaining the standard operations of the prison that was not "so remote as to render the policy arbitrary or irrational." IRO at 7 (quoting *Turner*, 482 U.S. at 89–90). Without that logical connection, this factor weighs in favor of Plaintiff.

The second *Turner* factor requires a court to consider whether "there are alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. The right at issue is the right to communicate with others outside of the prison. According to Plaintiff, he could still make one call per week and could send emails from the tablet in his cell. Am. Compl., ECF No. 25 at ¶¶ 8, 22. So, Plaintiff still had ways of communicating with others outside of the prison even if Defendants did not permit him to make free, daily 90-minute phone calls. Accordingly, this factor weighs in favor of Defendants.

The third *Turner* factor requires the Court to consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. The Court concluded that permitting AS inmates to make 90-minute phone calls each day would have a "significant 'ripple effect' on fellow inmates or on prison staff" because shackling and escorting every inmate in AS to make 90-minute daily phone

calls would require additional staffing. IRO, ECF No. 12 at 9–10 (quoting *Turner*, 482 U.S. at 90). This would in turn require diverting staff from existing assignments, which could impact the overall safety of all inmates and staff in the facility. *Id.* However, the Court cannot draw the same conclusion if Plaintiff could make phone calls on the tablet in his cell. Accordingly, this factor, too, weighs in favor of Plaintiff.

The fourth *Turner* factor requires the Court to consider "whether 'ready alternatives' in prison policy that would accommodate the right exist, indicating that the policy is 'an exaggerated response' to prison concerns." *Burns v. Martuscello*, 890 F.3d 77, 87 (2d Cir. 2018) (quoting *Turner*, 482 U.S. at 90). "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Turner*, 482 U.S. at 91.

The Court concluded that the prison could not accommodate Plaintiff's right to make free, daily 90-minute phone calls at "*de minimis* cost to valid penological interests," *id.*, because of the safety risk and staffing resources required to escort AS inmates to a landline phone. *See* IRO, ECF No. 12 at 10. This no longer holds true if Plaintiff could make phone calls from a tablet in his cell. As such, Defendants' phone call policy is seemingly "'an exaggerated response' to prison concerns." *Burns*, 890 F.3d at 87 (quoting *Turner*, 482 U.S. at 90). Accordingly, this factor weighs in favor of Plaintiff, as well.

Because three of the four *Turner* factors weigh in favor Plaintiff, he may pursue damages from Defendants in their individual capacities on his First Amendment claim.

**Orders**

Plaintiff may proceed on his First Amendment and state law claim for damages and declaratory relief against MWCI Warden Daniel Dougherty, MWCI Deputy Warden Doran, Deputy Commissioner of the DOC William Mulligan, and former Commissioner of the DOC Angel Quiros in their individual capacities.

The court enters the following additional orders:

(1) **The Clerk shall** verify the current work address for each Defendant with the DOC Office of Legal Affairs, mail a waiver of service of process request packet to each Defendant at the address provided on or before **November 12, 2026**, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing. If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the Defendant in his or her individual capacity and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send Plaintiff a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **May 14, 2027**. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed on or before **June 14, 2027**.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)(1) provides that he MUST notify the court. **Failure to do so can result in the dismissal of the case**. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED** this 14th day of October 2026 at Bridgeport, Connecticut.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE